To please the court, my name is Orwain McMillan. I began practicing immigration law in 1977, and until the mid-1990s, I had never won an asylum case, not before the asylum office and certainly not before the immigration judges. Are you bragging or complaining? Justifacts, ma'am. Justifacts. In 1996, I believe it was, a Burmese client of mine advised me that he had a countryman in the San Pedro detention center who wanted to apply for asylum. I couldn't find Burma on a map and certainly didn't know there were any problems there, but lo and behold, after attempting to communicate with him and his presenting his case to the immigration judge, the immigration judge granted the asylum case. Since that time, I have represented well over 100 Burmese clients before the immigration court, and I've only had four denied based on a lack of credibility. One has been remanded already, overturned, I should say, and the other three are pending, including this one. The procedural history of the case is, I think, interesting. On May 5, 2000, the immigration trial attorney, what was their position? And their position at 688 of the record is the government wouldn't oppose a grant of asylum based on the one-year issue, nor on the testimony. But in spite of that, the immigration judge denied the asylum application based on both the one-year rule and the testimony, finding a lack of credibility. The board, in one sentence, overruled the one-year rule denial and remanded the case to the judge, saying that, in part, his finding on lack of credibility appears to be at least partially based upon minor inconsistencies and her failure to submit corroborating documentation, citing a number of Ninth Circuit cases. Back before the immigration judge, no further testimony taken, no opportunity to present any further testimony. The judge simply disagreed with the board and said, no, I believe these are major inconsistencies, not minor inconsistencies. Actually, I think you're being a little charitable in your characterization. I thought he was a little more contemptuous, if you will, of the BIA. My apologies. Well, I shouldn't apologize. I think the judge... At any rate, he just decided the case the same way, basically, and sent it back. This time, a single judge, again, ignoring the first three-judge, three-board member decision, agreed with the immigration judge and found four problems with the Respondent's   testimony. First problem, confusion as to whether she went before a court in Myanmar as a result of her first arrest. She testified quite clearly at AR 583, did you ever appear before a judge in a formal courtroom? No, I didn't. Did you ever appear before any group of people in any type of proceedings? Yes, I did. What type of proceeding was that? It was in prison. Officers from the military. There were three of them. They came to ask us questions, and they called us to hearing in front of the military. Judge says, did they charge you with a crime? She said, yes, they did. My questioning, did you ever have an attorney or representative to assist you? No, I couldn't have an attorney or family member represent me. There's no confusion about that. The testimony is quite clear that she got tried before some type of military tribunal in the jail, in the prison. Second, she apparently, according to the board member, had no fear of returning to Burma in 1990. Could you go to the second one? That's where I got a little confused, on AR 595, on the formal trial with the judge in the courtroom, no, and went on about no witnesses and the like. Then on 597, get into, did they give you a sentence and tell you how long you were going to be in prison for a year, three people from the military, military court? This is where I'm confused. They said I was falsifying, asking money from people, and then in the transcript there are all these indiscernibles, and I'm having trouble understanding, what is, what was the understanding at the time of the hearing as to what it was she was charged with? Is there any clarity on that? Well, a lot of these transcripts have indiscernibles. It's a problem. I know how they do. We're familiar with that. I'm just, in this case, was she charged with, there was a tax issue, but that doesn't seem to be involved here. It's my recollection. What is it that she was collecting money for? Is it understood she was collecting money to help the opposition group? Yes, she was collecting money to help the NLD, the National League for Democracy. There is some lack of clarity in the record as to whether that's legal or illegal. I get the impression that there was not a formal charge of a violation of a particular statute, but more of a complaint that she was aiding the opposition party. I get the impression there was little or no due process before this military court. I can't, it was my understanding from the testimony that it was quite clear, and then in reading the transcript, it's not so clear. In 1997, not 1994, she tried to redo her passport by sending it to the Burmese Embassy. Frankly, I don't see any problem with that. She was here with an expired passport and no other form of identification. The judge read that to mean that, well, she intended to go back to Burma, and she testified specifically on that, that, let's see, I've lost my place.  At any rate, 605, excuse me. If I decided to go back to Burma, I needed the passport, so that's why I wanted to extend it. So as of August 1997, you still thought she might return to Burma at some point. Yes. Did you ever have any intention of going back? Yes. Did you have a time frame? I was going to go back after my country held the democracy. And then to the judge's questions at... So you're suggesting no inconsistency there? No. I intend to go back after we have democracy. He is certainly not expressing a lack of fear to going back while the dictatorship, the military dictatorship, is in power. Well, I've just given you the end of your comment because it seems to me rather than going through, what we're really talking about is there's substantial evidence to sustain even one of these situations where the I.J. found that there was inconsistency, confronted your client, looked at what your client said, and then determined on a rational basis whether there was inconsistency or not. That's what we're really looking at. I understand. But her testifying that she renewed her passport and she would intend to go back in the future after they had democracy or in answer to the judge's questions, when I had the plan to go back, it was only when things get better, not right away. I don't see how you can extrapolate from that that she had no fear of returning. I have no fear of returning sometime in the future when we have democracy and things are better, but not now. Where's the democracy? That is on 605, her testimony. At 609 she said, I'm going to go back after my country and have democracy. There was some concern about whether she believed it was legal or illegal to collect money from the NLD. There seemed to be inconsistency in that answer. I don't think that's particularly relevant. She's not a Burmese attorney. I don't know if she would know whether it was legal or illegal. Your time has expired. Thank you. Good morning. May it please the Court, Joan Smiley from the Department of Justice here on behalf of the Attorney General. The issue in the case is whether the evidence that Petitioner submitted was so compelling that no reasonable fact finder could fail to find that she met her burden of proof with credible evidence. The Board and the immigration judge identified seven specific and cogent reasons which support the adverse credibility finding. The first was inconsistency regarding whether she was on trial, whether she was not, whether she was charged with a crime. The testimony that counsel referred to, the Court is familiar with. However, in her asylum application on page 862 of the record, she clearly writes that she was never put on trial or accused of any specific crime. I think a lot of folks in Guantanamo would make that same argument, that if they got a military commission that they wouldn't think that they were being given a trial. Isn't that the sense of what she's, her responses are here? She doesn't hesitate or deny to say that she was given a hearing, if you will, in prison before a military court. But I don't read that testimony as inconsistent with saying she didn't, wasn't given a trial. She wasn't, there's no judicial officer, there's no right to call witnesses, no right to counsel. So what does trial mean in this context? What did the judge think a trial was? Well, she explains it in two different ways. First she says no, then she does say that she went, she was questioned by three military persons. Is that a trial? Would you call that a trial? I'm not sure whether that would be a trial or not. Why should she know? Well, the point is that she was inconsistent in her asylum application by saying she was never charged with a crime. Well, that's not the same thing as not having a trial. So let's talk about the trial. Was she, did she have a trial in prison? It's unclear from the record. There's no evidence in the record of any trial that she had one or she didn't have one. No, she, no. That's part of the problem. There's, her evidence was found to be not credible and there's no proof. Counselor, wait a minute, wait a minute, wait a minute. Now, there was evidence in the record as to what she said she got. She got, when asked the question that she was asked, she told what happened. She went before a military court, a military tribunal, a military hearing. Well, I'm not sure. Would you call that a trial? I believe she testified that three military persons questioned her. Okay, was that a trial then? Probably not. Okay, then what was the charge that she was being tried on? We don't know that from the record. Oh, we do. She said because she was out there on the first one, as I understand it, that she was opposing government policies. I thought the government said that absent these credibility findings, it would be clear that she was being politically persecuted. No, in fact, she testified that the Burmese government told her that there was a tax issue and that's why they were arresting her. Well, that was the second time. The second reason that was... That was the second time she went into prison, right? Yes, but there are other reasons. The second reason that was given by the immigration judge on the board was that she was not fearful of returning to Burma. In fact, she was. Okay, going back to the first one for just a moment. Did she say that in your brief she says that she was not given a trial and never appeared before any courts? It was... Is that what she said? I believe I stated that she said that military officials came and spoke with her. First she said that she was never tried and there were no specific charges. And then later she said that these military people came and spoke with her. And why is that inconsistent? I'm still at a loss, counsel. You're representing the government of the United States and you're standing up there saying that that is inconsistent? I'm saying that it's inconsistent with her asylum application specifically. How is it inconsistent? Which says that she was never accused of any specific crime and never tried. Well, was she? And never tried. Was she? You're telling me that you're finding that she was  the immigration judge on the board evaluating the evidence found that to be inconsistent and there were six other things they found. You're evading... I'm not evading it. I'm trying to answer you. Is the government's position that that is a trial, to be held in a prison and brought before a military tribunal, that that is what we consider a trial in the United States? It's not my position that it's a trial or it isn't a trial. I think I answered that question. Okay. I'll take the answer for what it represents. But in your brief you say that she originally testified she was not given a trial, never appeared before any courts, but was placed in jail. And then she said that she admitted she did go before military courts where she was charged and sentenced. Now, whether or not that's a trial, in your brief I thought you were claiming an inconsistency between her statement that she never appeared before any courts and her statement that she did appear before the military court and then was sentenced. Well, that's part of the inconsistency. And the other part is, as I've stated, between the testimony and her asylum application at 862. Counsel, do you know how offensive it can sound for the government, the Department of Justice, to stand here in this courtroom and say that you don't know whether she had a trial based on what she testified to when the government currently is protesting the treatment of U.S. citizens who are taken by Iran and are put through show trials and are publicly rebuking Iran for saying, those aren't trials. Those are sham trials. And yet you're saying that this person should be denied asylum because you can't decide based on the record whether she was being inconsistent with her application or not. If you were trying to seek asylum and you had been given a prison hearing like that, would you write down on your application that you had been given a trial? Of course not. Well, of course we're dealing with this case, not the situation in Iran or Guantanamo. But the bottom line, I think, in this case, Your Honor, is that Petitioner came to the United States as a visitor for five months, over 15 years ago. She's had 10 removal hearings between December 1998 and June 2004. An immigration judge issued three separate decisions. The court issued two separate decisions denying her claim. One of which reversed the adverse credibility findings and then remanded for further proceedings, which did not take place. Would the Court like me to go through the other six specific and cogent reasons, which are the second is about... Let me ask you a question which would be helpful to me. If, in fact, we were to find that the negative in credibility was not based on substantial evidence, what would be the result for us? What would we do? If the Court finds that the adverse credibility finding was incorrect, then it would have to remand under INS v. Ventura to give the Board the opportunity to determine whether she met her burden of proof in the first instance. If, in fact, we find that she was credible, that the I.J. was wrong, then at that point, can we find on this record that there is past persecution? It would be up to the Board to determine that in the first instance, Your Honor. Well, but didn't the I.J. make an alternative determination on that? I don't believe that the Board did. The Board ruled... The Board, the second time, just approved what the I.J. did, didn't they? Well, no. They listed the reasons that they agreed with the adverse credibility finding, and they adopted and affirmed the judge's decision. But under INS v. Ventura, a remand would be appropriate to allow the Board to make that finding in the first instance. And they would make the finding as to the past persecution? Yes, or they would remand to the immigration judge. Your brief, as I understand it, says, and I'm quoting, If the adverse credibility determination is rejected, the finding that her two incarcerations, but not necessarily the three rapes, constituted persecution motivated by her political opinion and activities would be unavoidable. That's what your brief says? Yes. I can't see any consistency between what you're arguing in your brief on that point or on the other point. Okay. I see that my time is up. The other reasons for the adverse credibility finding are set forth in pages 5 to 7 of the government's brief, which we would rely upon. Faced with the numerous inconsistencies, the immigration judge sought, but did not get corroborating evidence of any of her claims. Thank you. Thank you. Are there any further questions or petitions, Counselor? I have no further questions. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.